UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIAN JAMES DABNEY,

        Plaintiff,

v.

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:20-cv-238

Honorable Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in

Baraga, Baraga County, Michigan.  Plaintiff sues MDOC Director Heidi Washington, AMF Warden Daniel Lesatz, ICF Warden John Davids and Hearings Administrator Richard D. Russell.

Plaintiff alleges that on March 24, 2019, he placed a kite along with five attachments into Unit 7's mailbox addressed to the AMF records office.  The kite requested an international prisoner transfer and falsely stated that Plaintiff's real name was Tristan Hitsugoya Da Silva and that he was seeking a prison transfer to his home country of Brazil.  The five attached documents were forged letters in support of Plaintff's request to be transferred to Brazil.

On March 25, 2019, Inspector Cummings came to interview Plaintiff in housing Unit 7 about the kite and attached documents.  Plaintiff admitted to writing the kite and sending forged documents, but informed Inspector Cummings that his real name was Tristan, that he was born in Brazil, that he only wanted to be transferred to a place where he has family, Brazil or Arkansas, and that according to prison policy he should be given an application to see if it would be approved.

Immediately after lunch, Sergeant Stevens came to Plaintiff's cell door and told him he would be going to segregation where he was placed in cell 118 in Unit 3 on non-bond status.

On March 26, 2019, Stevens brought two misconducts to Plainitff's door and reviewed them with Plaintiff.  Plaintiff was charged with possession of forged documents, forgery (Code #421) and escape from secure facility (Code #050).

Plaintiff wrote a statement admitting to the submission of the forged documents but denied any intention to escape.  Plainitff's statement was submitted to the Hearing Investigator.

On March 29, 2019, Plainitiff was present during a video teleconference hearing on the misconduct charges. Plaintiff admitted and pleaded guilty to the Class II misconduct of forgery but denied the escape accusation.

The Hearing Officer, Thomas O. Mohrman, found Plaintiff guilty of escape. Mohrman concluded that Plaintiff's intent in requesting an application for prisoner transfer was to escape from federal custody or escape from the custody of the authorities in Brazil if Plaintiff had been approved for such a transfer.

Plaintiff was sanctioned with twenty days of detention and sixty days of loss of privileges, and he was reclassified to administrative segregation for an indefinite period of time. As of the date of filing his Complaint, Plaintiff continues to be housed in administrative segregation.

Plaintiff has several medical issues, including a severe metabolic disorder, Crohn's disease, and several other ailments. As part of Plainitff's treatment plan, specialists from the Upper Penisula Hospital and the University of Michigan recommended that Plaintiff receive physical therapy, described by Plaintiff as thirty minutes of weight-bearing exercise four or more days per week. Planitff is not getting physical therapy because of his classification to administrative segregation and as a serious escape risk. This classification limits his movement, his placement, and his ability to communicate with his at-risk children. Plaintiff is unable to maintain regular contact with his children, who have been diagnosed with mental disorders, are suicidal, and have suffered sexual abuse while Plaintiff has been incarcerated. Plainitff's children only trust him and will not open up to social workers or law enforcement unless Plaintiff is able to participate in the interviews. Plaintiff's housing in segregation is creating a severe hardship on him.

Plaintiff contends that he was wrongly found guilty of escape and therefore wrongly kept in his present classification. Plaintiff seeks an order directing the MDOC to expunge the escape conviction from his records and to have him immediately reclassified and placed in an appropriate setting where he can receive recommended medical care and can engage in the regular daily life activities of non-segregation inmates.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Insufficient Allegations

Plaintiff makes no specific allegations about the conduct of any Defendant in the case. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are

5

without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff fails to even mention any of the Defendants in the body of his complaint, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Even making the most favorable assumptions about what Plaintiff may have intended to allege against Defendants, he still would not state a claim for relief. For the additional reasons discussed *infra*, Plaintiff fails to state a claim.

## IV.     Supervisory Liability

Plaintiff identifies MDOC Director Washington as a Defendant as the person who sets policies, procedures and guildeines for each state prison to follow and who has a duty to ensure that inmates constitutional and human rights are preserved. With respect to AMF Warden LeSatz, Plaintiff vaguely states that, as the warden of the facility where the incident took place, LeSatz was made aware of Plainitff's actions and the actions of AMF staff and failed to correct or attempt to remedy the deprivation of Plainitff's rights. With respect to ICF Warden Davids, Plaintiff states that Davids is the warden of ICF, where Plaintiff presently is held in segregation, deprived of rights, and suffering significant hardships in relation to the ordinary incidents of prison life. Lastly, with respect to Hearings Administrator Russell, Plaitiff alleges that he failed to uphold Plaintiff's right to due process by not adequately supervising his subordinate, Hearing Officer Mohrman, and holding Mohrman to the policies set forth in the Hearings Handbook.

Plaintiff fails to allege that any Defendant took any action against him, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976),

7

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington, LeSatz, Davids or Russell encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plainitff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than respondeat superior liability, his action fails to state a claim.

### V.        Due Process:  Disciplinary Hearing

Even if the Court were to consider the merits of Plainitff's due process claim, he still would fail to state a claim.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v.*

*Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  Further, an inmate has no right to counsel in disciplinary proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff makes no claim that anything about the disciplinary hearing itself violated his due process rights.  There was a hearing, and Plaintiff was present for it.  There are no facts to suggest that the Hearing Officer was biased or that he prejudged the evidence.  The facts suggest that Plaintiff gave testimony at the hearing, and there are are no allegations to suggest that he was denied the opportunity to call witnesses or submit evidence, if he chose to do so.  It is clear that Plaintiff received due process of law.

## VI.     Due Process:  Confinement in Administrative Segreation

Moreover, to the extent that Plaintiff contends that his continued confinement in administrative segregation violates his right to due process, he fails to state a claim.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano,* 427 U.S. 215, 225 (1976).  In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459

9

U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of

10

periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

As of the date he filed his Complaint, Plaintiff had been in administrative segregation for less than six months, not a sufficiently lengthy period of time to trigger due process concerns, partciuarly where, as here the classification to administrative segregation was based on a hearing that met the requirements of due process and a finding that Plaintiff posed a serious escape risk. Plaintiff does not offer any facts to suggest that his classification to administrative segregation will not or has not been appropriately reviewed, nor does he allege any facts to demonstrate that his classification is presenting a particular hardship, making it "atypical and significant" in some other way. Although Plaintiff alleges that he is not able to maintain regular contact with his children, he does not suggest that he has no contact with them. Moreover, Plaintiff's allegation that he is not receiving physical therapy, which he defines as thirty-minutes of weight bearing exercise four or more time per week, is specious. There is no reason Plaintiff needs a medical professional to assist him in this goal and there are numerous weightbearing exercises that Plaintiff can do on his own, even in a small cell.

11

**VII.** **Eighth Amendment**

To the extent Plaintiff intended to allege a claim for violation of his Eighth Amendment rights based on a lack of treatment for his severe metabolic disorder, Crohn's disease and several other ailments, he fails to state a claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is

12

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff fails to even suggest that he is at a substantial risk of serious harm, let alone that a specific official acted or failed to act despite the official's knowledge of the substantial risk of harm Plaintiff faced. Plaintiff fails to set forth any facts to suggest that he is not obtaining the treatment, if any, that he needs for his ailments. Nor, as noted above, are there any facts to suggest that Plaintiff cannot obtain necessary physical therapy, as he has defined it, without the presence of a medical professional.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing

13

fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 22, 2021                             /s/ Hala Y. Jarbou
                                                                         HALA Y. JARBOU
                                                                         UNITED STATES DISTRICT JUDGE